UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
WINSOME WILSON,

                    Plaintiff,

        -against-                                  **Civil Action No**:25-cv-177 (MAD/PJE)
                                                          **JURY TRIAL DEMANDED**
SHAKER PLACE REHABILITATION &
NURSING CENTER,

                    Defendant.
-------------------------------------------------------------------------X

## COMPLAINT

The Plaintiff, WINSOME WILSON (hereinafter "Plaintiff"), as and for her Complaint against the Defendant, SHAKER PLACE REHABILITATION & NURSING CENTER, respectfully alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, Articles 6 and 19 of the New York Labor Law (hereinafter the "NYLL"), and the supporting New York State Department of Labor Regulations of the Official Compilation of Codes, Rules, and Regulations of the State of New York promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act including Parts 142 and 146 of Title 12 (hereinafter "Regulations"), and New York common law to recover unpaid regular wages, unpaid overtime compensation, statutory damages, damages for retaliation, damages for contract violations, and for other relief.

2. Jurisdiction over Plaintiff's FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

1

3.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

4.      Venue is appropriate in the Northern District of New York pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial District.

## PARTIES

5.      Plaintiff is an adult individual who is a resident of Albany, New York.

6.      Plaintiff was employed by Defendant from in or around 1992 through September of 2023.

7.      Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

8.      Defendant SHAKER PLACE REHABILITATION & NURSING CENTER (hereinafter "Defendant" or "Shaker Place"), formerly known as the Albany County Nursing Home, is a skilled nursing and rehabilitation facility located in Colonie, New York.

9.      Defendant is owned and operated by Albany County.

10.     Defendant's facility is, and at all relevant times was, located at 100 Heritage Lane, Albany, New York 12211.

11.     At all relevant times, Defendant maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices applied to her.

12.     Defendant is a covered employer within the meaning of the FLSA and the NYLL.

**FACTS**

**General Facts and Background**

13.    From in or around 1992 until on or around 2003, Plaintiff was employed as a Certified Nursing Assistant ("CNA") for the benefit of and at the direction of Defendants.

14.    In or around 2004, Plaintiff completed the necessary training and exams to become a Licensed Practical Nurse ("LPN").

15.    From in or around 2004 through September 2023, Plaintiff was employed as a LPN for the benefit of and at the direction of Defendant.

16.    In or around 2015, Larry Slatky ("Slatky") became Defendant's Executive Director.

17.    At all relevant times, Plaintiff was a member of 1199 SEIU United Healthcare Workers East union ("1199 SEIU").

18.    On January 1, 2019, a new collective bargaining agreement took effect as and between the County of Albany and Defendant's (then known as Albany County Nursing Home) "Service and Maintenance Unit" on the one hand and 1199 SEIU on the other hand. This union contract (hereinafter "2019 CBA") was in effect through December 31, 2023 and governs the entire relevant time period herein.

19.    Pursuant to the 2019 CBA, overtime was to be assigned "on a rotating, non-discriminating basis within each Department in accordance with seniority." Further, overtime was to "normally be assigned to Employees to cover the following shift" but would be assigned to employees who requested overtime barring a conflict. Should such conflict arise, the assignment of overtime reverted to the rotating basis with a priority given to requesting employees on the basis of seniority.

20.     Pursuant to the 2019 CBA, all overtime required prior management approval and "[a]ll authorized overtime" was to be paid "in quarter-hour (1/4) increments at the **appropriate rate of pay**" (emphasis added).

21.     The 2019 CBA also provided that all employees were to be compensated at "time and one-half (1-1/2) their regular straight hourly rate for all hours worked in excess of **thirty-five (35) hours** in any workweek" (emphasis added). The workweek is defined in the 2019 CBA as Sunday through Saturday.

22.     Finally, as is relevant here, the 2019 CBA also provided that Defendant's employees were to have a one-half (1/2) hour unpaid lunch break and a second one-half (1/2) hour unpaid break per shift.

23.     From the beginning of the relevant time period through some time in or about 2021, Plaintiff's regular hourly rate of pay was $23.42 per hour. Correspondingly, Plaintiff should have been paid $35.13 per hour, in quarter hour increments, for any time she worked beyond thirty-five (35) in a workweek.

24.     In or about 2021, 1199 SEIU reached an agreement with Defendant to increase the hourly rate for LPNs. In accordance with that agreement, Plaintiff's bargained-for regular hourly rate should have been $28.20[1] from in or about 2021 through the end of her employment in September 2023. Thus, Plaintiff should have been paid $42.30 per hour, in quarter hour increments, for any time she worked beyond thirty-five (35) in a workweek.

---

[1] Plaintiff's paystubs never listed an hourly rate. From the time of this raise through in or about November 2022, Plaintiff was consistently paid $986.96 for her "regular" thirty-five (35) hours each week. This amounts to $28.19885… per hour. Pursuant to the total pay and hours listed on her paystubs, both Plaintiff's regular rate of pay and OT rate of pay were paid in rates including fractions of cents. For the sake of simplicity Plaintiff has rounded anywhere hourly rates are referenced in this Complaint but will use the actual total paid where that rate is consistent week to week.

25.     From the beginning of the relevant time period through in or about November 2022, Defendant scheduled LPNs like Plaintiff for one of three daily shifts, each eight hours in length.

26.     From the beginning of the relevant time period through in or about November 2022, Plaintiff's regular schedule typically consisted of five (5) 7:00am to 3:00pm shifts each week.

27.     During this period, the row on Plaintiff's paystubs labeled "reg salary" listed a maximum of "35.00" in the "days/hrs" column. No actual pay rate appeared in that or any other row of her paystubs.

28.     In or about November 2022, Slatky announced that shifts would be extended to eight and one-half (8.5) hours each.

29.     Thereafter, and through the end of her employment, Plaintiff's regular schedule typically consisted of five (5) 7:00am to 3:30pm shifts each week.

30.     During this period, the row on Plaintiff's paystubs labeled "reg salary" listed a maximum of "40.00" in the "days/hrs" column. As before, no actual pay rate appeared in that or any other row of her paystubs.

31.     Given the needs of Defendant's business and constant staffing shortages, throughout the entirety of Plaintiff's employment, there was consistently ample opportunity to work overtime each week.

32.     Defendant's normal practice for Plaintiff and other LPNs was to have them provide their availability for overtime to their supervisor for any week in which they wished to work extra hours.

33.     From the beginning of the relevant time period through February 7, 2023, Plaintiff typically requested and was approved for multiple overtime shifts each workweek.

34.    Beginning on February 8, 2023, Plaintiff was no longer approved to work overtime hours or scheduled for any despite continuing to request same.

35.    For reasons discussed below, Plaintiff retired and ceased working for Defendant in September 2023.

**Defendant's Unlawful Pay Practices Related to Plaintiff's Breaks**

36.    Under the 2019 CBA, Plaintiff was entitled to two (2) unpaid thirty (30) minute breaks per shift.

37.    Accordingly, from the beginning of the relevant time period through in or about November 2022, when Plaintiff's regular schedule consisted of five (5) eight (8) hour shifts each week, she should have been paid for a minimum of seven (7) hours each day and thirty-five (35) hours each workweek.

38.    Based on the needs of Defendant's patients, Plaintiff was frequently unable to take both of these breaks during her shift. At times, Plaintiff was not even able to take one full break during a shift.

39.    The same was true during the additional overtime shifts that Plaintiff worked for Defendant.

40.    During the relevant time period, Plaintiff was required to punch in and out at the beginning and end of day as well as for breaks. Thus, Defendant was aware of the hours actually worked by Plaintiff each day and each week.

41.    However, regardless of whether or not Plaintiff took one or both of these breaks, Defendant only paid Plaintiff for seven (7) hours for each full shift she worked from the beginning of the relevant time period through in or about November 2022.

42.     From in or about November 2022 through the end of Plaintiff's employment, when Plaintiff's regular schedule consisted of five (5) eight and one-half (8.5) hour shifts each week, Defendant paid her for eight (8) hours each shift and forty (40) hours each week without regard to whether she actually took even a single break of longer than twenty minutes.

**The "Retention Stipend"**

43.     In or about the beginning of August 2022, Slatky advised Plaintiff and other similarly situated employees that they would begin receiving additional pay each week which Defendant referred to as a "retention" bonus or stipend.

44.     Plaintiff was extremely suspicious of this as with everything Slatky announced to the employees, as he tended to phrase things as beneficial and even put them to "votes" but ultimately, in her experience, nothing under Slatky's leadership ever resulted in a benefit to the employees.

45.     Initially, Plaintiff did in fact receive additional pay each week being. Specifically, while Plaintiff continued to be paid at the bargained-for rate of $28.20 per hour for hours up to thirty-five (35) each week and at the corresponding time and one-half rate for hours thereafter, she also received a line item in each paystub that amounted to an additional $4 per hour for each hour she was compensated for in the workweek.

46.     By way of example, for a brief period of time, if Plaintiff was paid for sixty hours in a given workweek, she would be paid a total of $2,284.42, broken down as follows: (1) $986.96[2] as "reg salary" for thirty-five (35) hours; (2) $1,057.46 in overtime for twenty (25) hours; and, an additional $240 representing a flat $4 for each of the sixty (60) hours worked.

---

[2] *See* footnote 1.

47.    However, in or about November 2022, at or around the same time that Slatky announced that he was extending each shift by one-half (1/2) hour, Plaintiff's paystubs began showing "40" hours in the "reg salary" row instead of "35."

48.    Thereafter, in direct violation of the 2019 CBA, Plaintiff was only paid at an overtime premium for the hours she worked beyond forty (40) each week.

49.    Moreover, despite the hours listed increasing, Plaintiff's "reg salary" continued to be paid at the exact same rate -- $986.96.

50.    Accordingly, Plaintiff's regular hourly rate was dropped to $24.67 per hour. Inexplicably, Plaintiff's overtime rate thereafter appears to have been paid at a rate of approximately $38.70[3] for hours worked beyond forty (40). This rate does not equate to time and one-half of any hourly rate Plaintiff was paid during her employment with Defendant.

51.    Defendant misrepresented to Plaintiff and other employees that the "retention stipend" they initially received **in addition to** their pay made up for this difference in hourly rate.

52.    Not only was this untrue but Defendant also altered the retention bonus in or about November 2022, at the same time that it increased the hours per shift and stopped paying overtime after thirty-five (35) hours, in direct violation of the 2019 CBA, which was still in effect.

53.    Specifically, rather than paying a flat additional $4 for every hour Plaintiff was compensated for in a workweek, the "retention bonus" was thereafter paid at a rate of $3.50 per hour worked up to forty (40) each week and $5.25 for each hour worked beyond forty (40) in a week.

54.    By way of example, from the time the bargained-for raise took effect in or about 2021 through in or about early August 2022 when the original "retention bonus" was instituted, if

---

[3] As with Plaintiff's hourly rate reference in footnote 1, this rate is rounded as the real rate seems to have included a fraction of a cent.

8

Plaintiff was compensated for sixty (60) hours in a week, she would have made a total $2,044.42, broken down as follows: (1) $986.96[4] as "reg salary" for thirty-five (35) hours; and, (2) $1,057.46 in overtime for twenty (25) hours.

55.      By comparison, starting in or about November 2022, if Plaintiff was compensated for sixty (60) hours in a week, she would have made a total $2,005.96 broken down as follows: (1) $986.96[5] as "reg salary" for forty (40) hours; (2) $774.00 in overtime pay for twenty (20) hours; (3) $140 in regular "retention stipend" for forty (40) hours; and, (4) $105.00 in "OT retention stipend" for twenty (20) hours.

56.      Clearly, even when giving Defendant the benefit of the doubt and aggregating the totals of "retention stipends" and the hourly pay Plaintiff received beginning in or about November 2022, Plaintiff was losing money as compared the period of time that she was compensated in accordance with the 2019 CBA.

57.      Accordingly, despite Defendant's contentions, the "retention stipends" did not make up for other changes it made to Defendant's compensation in or around November 2022.

58.      In or about the beginning of June 2023, Defendant ceased paying Plaintiff the retention bonus and increased her hourly rate. However, while a minimal difference, it still did not pay Plaintiff in accordance with the bargained-for rate as she was paid $28.17 per hour from then through the end of her employment.

59.      Additionally, through the end of her employment, Defendant continued to pay Plaintiff at a straight time rate for all hours up to forty (40) despite it being contrary to the 2019 CBA.

---

[4] *See* footnote 1.
[5] *See* footnote 1.

**Defendant's Retaliation**

60.     Not surprisingly, Defendant's employees had difficultly figuring out exactly how they were being paid following the changes made by Defendant in or about August 2022 and again in or about November 2022.

61.     Defendant provided no clarity in this regard and the paystubs Defendant provided Plaintiff were missing categories of lawfully required information such that it was difficult to decipher how she was being paid by examining them.

62.     As a result, Defendant's employees began discussing amongst themselves the new wage and hour practices they were being subjected to.

63.     Plaintiff, while unclear on exactly what the problem was or how to explain it, was sure that something was wrong with the changes that took effect in or about November 2022.

64.     Plaintiff became increasingly vocal in this regard towards the end of December 2022 and into January 2023, complaining that they were definitely being paid less and that the "stipend" did not make up for it.

65.     Plaintiff worked her last overtime shift for Defendant on February 7, 2023.

66.     Shortly thereafter, Plaintiff noticed that she was no longer being given overtime hours, despite continuing to provide her availability and request them each week.

67.     Around the end of February 2023, Plaintiff went to Slatky and inquired about how she was being paid and why she was no longer getting overtime hours.

68.     In response, Slatky told Plaintiff that he knew she had been talking about Defendant's wage and hour practices with her coworkers and told her she was a "con-artist," a "manipulator," and "not a team player."

69.    Further, Slatky told Plaintiff that he would never allow her to work overtime hours again.

70.    And, additionally, Slatky advised Plaintiff that he would not be correcting "anything" with regard to the wage and hour practices and that she should find another job.

71.    Thereafter, while Plaintiff continued to provide her overtime hours to her supervisor, week after week she was denied any work beyond her regularly scheduled hours.

72.    If Plaintiff questioned this, her supervisor would respond that Slatky had said she wasn't allowed to be given any overtime.

73.    These denials continued through the end of Plaintiff's employment.

74.    This loss of hours and the resultant substantial loss of pay caused Plaintiff severe emotional distress, including anxiety and depression, and physical manifestations of same.

75.    As a result, Plaintiff ultimately made the decision to retire from Defendant's employ in September 2023, after over thirty (30) years of service.

**The Entire Relevant Time Period**

76.    During the entire relevant time period, Plaintiff never received an accurate written statement with her wages each week that included all lawfully required information, including rates of pay.

77.    Additionally, by failing to pay Plaintiff for breaks without regard to whether she took them or not, Plaintiff's paystubs did not actually include an accurate accounting of the regular or overtime hours Plaintiff worked each week.

78.    Throughout Plaintiff's entire employment, Defendant failed to furnish her with a wage notice as required by NYLL § 195(1).

79.     Throughout Plaintiff's entire employment, Defendant failed to provide Plaintiff with a notice and acknowledgment of pay rate and pay day or any other type of wage notice or document as required by NYLL § 195(1).

80.     Throughout Plaintiff's entire employment, Defendant failed to furnish Plaintiff with accurate wage statements along with every payment of wages as required by NYLL § 195(3).

81.     Defendant failed to provide Plaintiff with accurate earnings statements, paystubs, cash receipts, or any other type of accurate wage statement along with her wages paid to her each week as required by NYLL § 195(3).

82.     Defendant managed Plaintiff, including the number of hours that she worked each workweek, during her employment.

83.     During her employment, Plaintiff should have been paid in accordance with the 2019 CBA and the bargained-for rate of pay.

84.     During her employment, Plaintiff was not exempt from the provisions of the FLSA or the NYLL.

85.     Defendant devised, dictated, implemented, controlled, and supervised the wage-and-hour practices and policies relating to Plaintiff.

86.     Defendant was aware of Plaintiff's hours worked and of her rights under the 2019 CBA, but failed to pay her the full amount of wages to which she was and is entitled for this work time under the law and pursuant to the CBA.

87.     Defendant's failures to pay proper wages have been made without good faith, willfully, and with a reckless disregard for Plaintiff's rights; and Plaintiff has been damaged by such failures.

## COUNT I

**VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET SEQ.***
**FLSA-Failure To Pay Regular Wages**

88.    Plaintiff alleges, re-alleges and incorporates by reference all allegations from all preceding paragraphs as though fully set forth herein.

89.    During the relevant time period of her employment, Defendant required Plaintiff to regularly work several hours each workweek without paying her regular wages.

90.    Pursuant to the 2019, CBA, Plaintiff was entitled to be paid pursuant to the bargained-for hourly rate of pay.

91.    During the entire relevant time period, Defendant suffered and permitted Plaintiff to regularly work certain hours each workweek without paying her regular rates of pay or any compensation at all.

92.    Beginning in or about November 2022, Defendant suffered and permitted Plaintiff to regularly work at a rate of pay less than the rate to which she was entitled.

93.    Defendant's failures to pay Plaintiff for all the hours she worked each workweek at the correct hourly rate constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiff's rights.

94.    As a result of Defendants' violation of the FLSA, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

13

## COUNT II

**VIOLATION OF SECTIONS 191 AND 198 OF THE NEW YORK LABOR LAW**
**Failure To Pay Regular Wages**

95.    Plaintiff alleges, re-alleges and incorporates by reference all allegations from all preceding paragraphs as though fully set forth herein.

96.    During the relevant time period of her employment, Defendant required Plaintiff to regularly work several hours each workweek without paying her regular wages.

97.    Pursuant to the 2019, CBA, Plaintiff was entitled to be paid pursuant to the bargained-for hourly rate of pay.

98.    During the entire relevant time period, Defendant suffered and permitted Plaintiff to regularly work certain hours each workweek without paying her regular rates of pay or any compensation at all.

99.    Beginning in or about November 2022, Defendant suffered and permitted Plaintiff to regularly work at a rate of pay less than the rate to which she was entitled.

100.    Defendant's failures to pay Plaintiff for all the hours she worked each workweek at the correct hourly rate constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiff's rights.

101.    As a result of Defendants' violation of the NYLL and the Regulations promulgated therein, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

## COUNT III

**VIOLATION OF NEW YORK LAW**
**Failure to Pay Plaintiff in Accordance with The Union Contract**

102.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

103.    Throughout the relevant time period, Defendant failed and refused to pay Plaintiff in accordance with all rights she was entitled to under the 2019 CBA and other bargained-for terms of employment.

104.    Throughout the relevant time period, Defendant failed and refused to pay Plaintiff for each hour she worked in a workweek.

105.    Beginning in or about November 2022, Defendant failed and refused to pay Plaintiff at the bargained-for rate of pay that she was entitled to for any hours worked.

106.    Beginning in or about November 2022, Defendant failed and refused to pay Plaintiff at an overtime premium for each hour worked over thirty-five (35) in accordance with her rights under the 2019 CBA.

107.    Beginning in or about February 2022, Defendant failed and refused to allow Plaintiff to work overtime hours in violation of the procedures in the 2019 CBA related to same.

108.    Defendant's failures to pay Plaintiff in accordance with the 2019 CBA and her bargained-for rights constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiff's rights.

109.    As a result of Defendant's actions, Plaintiff has incurred harm and loss in an amount to be determined at trial.

## COUNT IV

**VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET SEQ.***
**FLSA-Failure To Pay Overtime Wages**

110.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

111.    At all times relevant to this Complaint, Defendant has been and continues to be an "employer" within the meaning of the FLSA (29 U.S.C. § 207(a)(2)).

112.    At all times relevant to this Complaint, Defendant "employed" Plaintiff by suffering or permitting her to work within the meaning of the FLSA (29 U.S.C. § 203(g)).

113.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

114.    At all times relevant to this Complaint, Defendant had more than two (2) employees handling goods or materials that have moved in interstate commerce, including Plaintiff who handled goods and supplies that moved in interstate commerce.

115.    At all times relevant to this Complaint, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA (29 U.S.C. § 203(s)). As such, the Defendant was and is subject to the overtime pay requirements of the FLSA because said Defendant is an enterprise engaged in commerce or in the production of goods for commerce.

116.    Upon information and belief, the gross annual volume of business done by Defendant for the years 2019, 2020, 2021, 2022, and 2023 was not less than $500,000.00.

117.    At all times relevant to this action, Plaintiff was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. §§ 207, *et seq*.

118.    Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

119.    By the above-alleged conduct, Defendant has violated the FLSA by failing to pay Plaintiff overtime compensation for all hours worked in excess of forty (40) per week as required by the FLSA.

120.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

121.    However, none of the Section 13 exemptions apply to Plaintiff because she has not met the requirements for coverage under the exemptions.

122.    Defendant has acted willfully and has either known that its conduct violated the FLSA or has shown reckless disregard for the matter of whether its conduct violated the FLSA.

123.    Defendant has not acted in good faith with respect to the conduct alleged herein.

124.    As a result of Defendant's violations of the FLSA, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees, and costs of litigation pursuant to 29 U.S.C. § 216(b).

## COUNT V

**VIOLATION OF ARTICLES 6 AND 19 OF THE NEW YORK LABOR LAW**
**NYLL– Failure To Pay Overtime Wages**

125.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

17

126. At all times relevant to this Complaint, Defendant was an "employer" of Plaintiff within the meaning of the NYLL and the supporting Regulations pertaining thereto.

127. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of the NYLL and the supporting Regulations pertaining thereto.

128. At all times relevant to this Complaint, Defendant employed Plaintiff, suffering or permitting her to work within the meaning of the NYLL and the supporting Regulations pertaining thereto.

129. At all times relevant to this Complaint, Plaintiff was employed by Defendant within the meaning of NYLL §§ 2 and 651.

130. The overtime wage provisions of Article 19 of the NYLL and its supporting New York State Department of Labor Regulations apply to Defendant and protect Plaintiff.

131. Under New York law, an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) per workweek. 12 N.Y.C.R.R. §146-1.4.

132. By the above-alleged conduct, Defendant failed to pay Plaintiff overtime compensation for all hours that she worked in excess of forty (40) hours each workweek for Defendant.

133. By the above-alleged conduct, Defendant failed to pay Plaintiff overtime compensation as required by the NYLL and the Regulations pertaining thereto.

134. Plaintiff is not exempt from the overtime provisions of the NYLL and the Regulations pertaining thereto because she has not met the requirements for any of the reduced number of exemptions available under New York law.

135.    At all times relevant to the Complaint, Defendant failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

136.    Defendant has acted willfully and either knew that its conduct violated the NYLL and the Regulations pertaining thereto or has shown a reckless disregard for the matter of whether its conduct violated the NYLL and the Regulations pertaining thereto. Defendant has not acted in good faith with respect to the conduct alleged herein.

137.    Through its knowing and intentional failure to pay Plaintiff overtime wages for all hours worked in excess of forty (40) hours each workweek, Defendant willfully violated Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

138.    As a result of Defendant's violations of the NYLL and the Regulations promulgated therein, Plaintiff has incurred harm and loss in an amount to be determined at trial, and is entitled to recover from Defendant her unpaid overtime wages, as provided for by the NYLL and supporting Regulations, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT VI

**VIOLATION OF THE FLSA**
**Retaliation**

139.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations in all preceding paragraphs as though fully set forth herein.

140.    Plaintiff alleged that Defendant was violating the FLSA in terms of how it was paying its employees, including Plaintiff.

141.    Prior to these allegations, Plaintiff was working approximately twenty (20) hours over overtime each workweek.

19

142.    As a result of making these allegations against Defendant, Defendant refused to let Plaintiff work overtime hours despite her right to do so under the 2019 CBA.

143.    Defendant had no reason to forbid Plaintiff from working overtime other than the allegations she made against it.

144.    Plaintiff suffered significant economic loss as a result of Defendant's actions.

145.    Plaintiff suffered severe emotional distress as a result of the retaliation she was subjected to and the resultant financial loss.

146.    Defendant retaliated against Plaintiff with intentional and reckless disregard to Plaintiff's rights.

147.    Defendant retaliated against Plaintiff despite the risk that their actions would violate federal law.

## COUNT VII

**VIOLATION OF THE NYLL**
**Retaliation**

148.    Plaintiff alleges, re-alleges, and incorporates by reference all allegations in all preceding paragraphs as though fully set forth herein.

149.    Plaintiff alleged that Defendant was violating the NYLL in terms of how it was paying its employees, including Plaintiff.

150.    Prior to these allegations, Plaintiff was working approximately twenty (20) hours over overtime each workweek.

151.    As a result of making these allegations against Defendant, Defendant refused to let Plaintiff work overtime hours despite her right to do so under the 2019 CBA.

152.    Defendant had no reason to forbid Plaintiff from working overtime other than the allegations she made against it.

153. Plaintiff suffered significant economic loss as a result of Defendant's actions.

154. Plaintiff suffered severe emotional distress as a result of the retaliation she was subjected to and the resultant financial loss.

155. Defendant retaliated against Plaintiff with intentional and reckless disregard to Plaintiff's rights.

156. Defendant's retaliated against Plaintiff despite the risk that their actions would violate New York law.

## COUNT VIII

**VIOLATION OF SECTION 195(1) OF THE NEW YORK LABOR LAW**
**NYLL– Failure To Provide Wage Notices**

157. Plaintiff alleges, re-alleges, and incorporates by reference all allegations in all preceding paragraphs as though fully set forth herein.

158. Defendant willfully failed to furnish Plaintiff with wage notices during the entirety of her employment, including the date of her hiring, as required by NYLL § 195(1), in English or in the language identified by Plaintiff as her primary language, which were to contain, among other things, Plaintiff's rate or rates of pay and basis thereof; the regular pay day designated by Defendants as employers in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and Plaintiff's regular hourly rates of pay and overtime rates of pay.

159. Through its knowing and intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendant has willfully violated NYLL §§ 190 *et seq.* and the supporting Regulations.

160.     Due to Defendant's willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees provided by NYLL § 198(1-b).

# COUNT IX

**VIOLATION OF SECTION 195(3) OF THE NEW YORK LABOR LAW**
**NYLL– Failure To Provide Wage Statements**

161.     Plaintiff alleges, re-alleges and incorporates by reference all allegations in all preceding paragraphs as though fully set forth herein.

162.     Defendant willfully failed to provide Plaintiff proper written wage statements with her wages each week as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

163.     Through its knowing and intentional failure to provide Plaintiff with accurate wage statements required by the NYLL, Defendant has willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

164.     Due to Defendant's willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, by and through her attorneys, Harding Mazzotti LLP demands judgment against Defendant and in favor of Plaintiff, for a sum that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of the damages, costs of this action, and as follows:

22

A.      Declare and find that Defendant committed one or more of the following acts:

    1.      Violated provisions of the FLSA by failing to pay regular and overtime wages to Plaintiff and by retaliating against Plaintiff;

    2.      Willfully violated the provisions of the FLSA;

    3.      Violated the provisions of the NYLL by failing to pay regular wages, overtime compensation, and by retaliating against Plaintiff;

    4.      Willfully violated the applicable provisions of the NYLL;

    5.      Violated contract law by failing to pay Plaintiff in accordance with the 2019 CBA and other bargained-for rights; and,

    6.      Violated the provisions of the NYLL by failing to provide Plaintiff with wage notices and wage statements;

B.      Award compensatory damages including regular wages and overtime compensation in an amount according to proof;

C.      Award back pay, compensatory damages, damages for emotional distress;

D.      Award interest on all NYLL regular wages and overtime compensation and other compensation due accruing from the date such amounts were due;

E.      Award all costs and attorneys' fees incurred in prosecuting this action, liquidated damages under the FLSA and the NYLL, and statutory penalties under the NYLL; and,

F.      Provide such other and further relief as the Court deems just and equitable.

### **JURY DEMAND**

Plaintiff demands a trial by jury with respect to all issues properly triable by jury.

23

Dated: February 7, 2025
      Albany, New York

**HARDING MAZZOTTI, LLP**

By:

MELANIE J. LAZARUS, ESQ.
*Attorneys for Plaintiff*
1 Wall Street
Albany, New York 12205
Tel.: (518) 556-3476
Email: Melanie.Lazarus@1800law1010.com

TO:   SHAKER PLACE
      REHABILITATION & NURSING CENTER
      100 Heritage Lane
      Albany, New York 12211